The defendants claimed title as follows: The said William H. Clay was indebted to Willie P. Mangum on 20 May, 1820, in the sum of $28, for which a warrant was brought before a justice of the peace in Granville County, who rendered judgment thereon, from which an appeal was taken to the next county court of Granville, to wit, August sessions, 1820, in which case, at the succeeding November sessions, 1820, judgment was given in favor of the said Mangum for his said debt and costs, and thereupon a fi. fa. issued, which was levied on the disputed premises by the sheriff on 4 December, 1820, and return thereof was made to February sessions, 1821, of said court, and thereupon a venditioni exponas issued to May sessions, 1821, upon which the sheriff, on 29 March, 1821, sold the premises in legal from, and conveyed them by deed to the defendant, who, upon the trial, read in evidence the record of Mangum's recovery, the writs of execution issued thereon, and the sheriff's deed to them, which had been duly proved and registered.
The defendants further alleged that the purchase made by the said Cooke, and the deed by him taken, were fraudulent and void as against the said Mangum and other creditors of Clay; and to prove this they gave in evidence that Clay had resided for several years in Granville County; and that in 1819 he was greatly indebted and removed to Georgia, and soon afterwards became insolvent; that in the spring or early in the summer of 1820 he sent by one John Green the sum of $646.19 to the said Cooke, to be applied to the satisfaction of said debts owing to S. and J. Parkhill; that the sheriff agreed to take the promise of said Green to pay the debt of Yancey, and (152) that on 29 July, 1820, the said Green did pay to the sheriff the sum of $346.19 in satisfaction of Yancey's execution, and that also on 29 July, 1820, the said Green paid over to said Cooke the sum of $300, and took his receipt therefor, in the following words, viz.: *Page 72 
29 July, 1820.
Received of William H. Clay, by the hands of John Green, $300 for the purpose of applying to the credit of an attachment which J. and S. Parkhill had against said Clay.
THOMAS COOKE.
That the said Cooke did not thereupon pay the said money over to the sheriff, but suffered the disputed premises to be sold, and bought them himself, as aforesaid.
On behalf of the plaintiff it was then contended that although Cooke had not credited the bond of Clay, which he held, with the said $300, yet he had a right to apply the said money to his own debt, and then to purchase the premises at the sheriff's sale without imputation of fraud; and the plaintiff's counsel further contended that although the said Cooke had not applied the said sum to the satisfaction of the said executions, yet his purchase of the premises did not thereby become fraudulent and void, but it only constituted a breach of trust, for remedy whereof the said Clay or his creditors must apply to a court of equity, since the legal title passed to Cooke by the sale of the sheriff, and his deed is good and valid; and they also further contended that even if the purchase made by Cooke was fraudulent and void, while he himself should claim under it, yet that the lessor of the plaintiff was a bona fide purchaser for a valuable consideration without notice, and that by reason thereof his title was good. And, on behalf of the plaintiff the court was moved to instruct the jury accordingly. But the court refused so to instruct the jury, and charged (153) the jury "that if they should believe that Cooke purchased the said house and lot with said Clay's money, and in trust for him, and took the deed to himself with intent to defraud or hinder the said Mangum or other creditors of said Clay of their debts, the same was void; and the premises still would remain subject to the creditor's of Clay." And the court further charged the jury; if they should be of opinion that the said purchase and conveyance to Cooke was fradulent and void as aforesaid in the hands of said Cooke himself, that the same still continued fraudulent and void, and could not be set up against the said Mangum and the defendants by the lessor of the plaintiff, notwithstanding the said deed from the said Cooke to the lessor of the plaintiff under the circumstances aforesaid. The jury found for the defendant, and judgment was given accordingly. On motion for a new trial the same was overruled, and the plaintiff appealed to this Court.
The conduct of Cooke after receiving Clay's money under a promise of applying it in payment of Parkhill's judgment, though not reconcilable with strict morality, is yet susceptible of some extenuation. The sum was insufficient to pay the debt, and would not, therefore, have arrested the execution. Cooke was himself a creditor, and must have passively witnessed a sale of the property and the probable loss of his own debt; hence the temptation was strong upon him to seize a plank in the shipwreck; and though in justice such temptation should have been resisted after his promise, even at the hazard of losing his debt, yet his conduct cannot in any point of view be considered as fraudulent upon Clay's creditors. All that they or Clay can rightfully demand from him is the surplus of the money for which the property sold. To a certain extent Cooke became a trustee for Clay, but to what amount depended upon the (154) adjustment of accounts between them. But the act of 1812 rendering lands liable to execution against the cestui que trust does not affect this case; for that act relates only to those fraudulent trusts in which the trustee has nothing more than the formal legal title, and the cestui quetrust the whole beneficial interest; for the act provides that on such sales the land shall be held and enjoyed, "freed and discharged from all encumbrances of such person or persons so seized or possessed, in trust for the person or persons against whom such execution shall be used." It is very evident that executions were not intended by the statute to reach those equitable interests which depend on the consideration and adjustment of various points of equity and the settlement of accounts.
I am of opinion that Clay's interest in this lot, or rather his equitable claim upon Cooke, was not one of those contemplated by the act.
But whatever the conduct of Cooke was in the purchase of the lot, it cannot affect the title of Hawkins. He was a fair purchaser without knowledge of or participation in the breach of trust committed by Cooke, and is entitled to recover. There must be a new trial.